**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 14-4416**

───────────

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

ANTHONY PALOMINO-CORONADO,

                    Defendant - Appellant.

───────────

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Roger W. Titus, Senior District Judge.
(8:12-cr-00287-RWT-1)

───────────

Argued: September 17, 2015          Decided: November 5, 2015

───────────

Before MOTZ, KING, and GREGORY, Circuit Judges.

───────────

Reversed and vacated by published opinion.  Judge Gregory wrote
the opinion, in which Judge Motz and Judge King joined.

───────────

**ARGUED**: Joanna Beth Silver, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Baltimore, Maryland, for Appellant.  Kristi Noel
O'Malley, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt,
Maryland, for Appellee.  **ON BRIEF:** James Wyda, Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore,
Maryland, for Appellant.  Rod J. Rosenstein, United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,
Maryland, for Appellee.

───────────

GREGORY, Circuit Judge:

Anthony Palomino-Coronado was convicted of knowingly employing, using, persuading, inducing, enticing, or coercing a minor in sexually explicit conduct, for the purpose of producing a visual depiction of that conduct, in violation of 18 U.S.C. § 2251(a). On appeal, Palomino-Coronado claims that there was insufficient evidence to convict him and that the district court improperly denied his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. We agree.[1]

I.

In the early morning hours of May 3, 2012, Prince George's County police officers were called to a home in Laurel, Maryland, in response to a report of a missing seven-year-old child. Officers eventually found the child, B.H., outside the house next to a fence adjoining the neighbor's yard. B.H. said that she had been next door hanging out with a friend.

Interviews with B.H. led the police to bring her to the hospital for a sexual assault forensic exam. Nurse Sharon Rogers performed the exam and found that B.H.'s hymen had been

---

[1] Palomino-Coronado further contends that the district court erred by failing to take adequate steps to ensure that an expert's dual role did not prejudice or confuse the jury and that his sentence was procedurally unreasonable, issues we do not reach here.

2

torn, indicating that it had been penetrated. Rogers also identified an odor, redness, and irritation, which were consistent with an infection. Rogers determined that B.H. likely could not have gotten this type of infection from sexual activity in the hours preceding the exam, suggesting that sexual activity had also occurred previously. Rogers also interviewed B.H. During the interview, B.H. said that she had been at "Anthony's" house that night, that she had been there about ten times previously, and that they would spend time in his basement. Palomino-Coronado, then nineteen years old, was B.H.'s neighbor.

Following the exam, Detective Cleo Savoy interviewed B.H. The two first spoke privately for about an hour and a half and were then joined by B.H.'s guardian; at that point, Savoy began to record the interview. During the unrecorded portion of the interview, Savoy testified that B.H. said that she went to Palomino-Coronado's house, where they played games in the basement, Palomino-Coronado kissed her, and they had sex. B.H. also said that Palomino-Coronado took pictures. During the recorded portion of the interview, B.H. denied having any sexual contact with Palomino-Coronado.

On May 3, 2012, Prince George's County detectives interviewed Palomino-Coronado and swore out a search warrant on his residence. The police also seized Palomino-Coronado's cell

3

phone. Later that day, a communications specialist with the Prince George's County Police Department extracted deleted and undeleted images from Palomino-Coronado's cell phone, including one picture of a male lying on top of a paisley-patterned sheet while vaginally penetrating a child. The extraction revealed that this particular image had been deleted.

The FBI later conducted its own forensic image extraction from Palomino-Coronado's cell phone, finding the same photo of a man penetrating a child. Other images were also recovered, including thousands of Palomino-Coronado's face and at least three other images of B.H. in non-sexually explicit contexts.

On May 15, 2012, Martha Finnegan, an FBI child forensic interview specialist, interviewed B.H. During that interview, B.H. told Finnegan that she had had sexual contact with Palomino-Coronado and identified the two individuals in the picture as "B" for B.H. and "A" for Anthony.

The government sought to indict Palomino-Coronado on one count: knowingly employing, using, persuading, inducing, enticing, and coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct in violation of 18 U.S.C. § 2251(a).[2]

---

[2] At oral argument, the government acknowledged that an indictment was pending in state court for various state-law (Continued)

At trial, B.H. testified that Palomino-Coronado had touched her private parts on more than one occasion. She also testified that she was scared during her initial interview with the police and had lied to them. She then identified herself and Palomino-Coronado in the pictures from his cell phone, including the sexually explicit photo. B.H. also testified that during her interview with Savoy, Savoy told her that she could not go home if she kept denying that she and Palomino-Coronado had had sex. B.H. said that Savoy had taken her teddy bear away from her during the interview because she was not answering Savoy's questions.

Finnegan also testified, both as a lay witness and as an expert in child forensic interviewing. As part of her testimony, she evaluated the interview that Savoy conducted and explained that it was coercive and did not follow established protocols. Finnegan also testified about her own interview of B.H., during which B.H. disclosed to her that B.H. and Palomino-Coronado had engaged in sexual conduct and identified the photograph.

At the close of the government's case, Palomino-Coronado made a motion for judgment of acquittal based on insufficient

crimes, which might well be supported by the unfortunate and horrific events that are at issue here.

evidence pursuant to Federal Rule of Criminal Procedure 29.  The district court denied the motion.

The jury subsequently found Palomino-Coronado guilty.  The court sentenced him to thirty years, which was both the maximum permitted under the statute and the lowest amount of time within the guidelines range.  Palomino-Coronado timely appealed.

## II.

We review a challenge to the sufficiency of the evidence de novo.  United States v. Engle, 676 F.3d 405, 419 (4th Cir. 2012).  We must affirm the verdict if it is supported by substantial evidence, viewed in the light most favorable to the government.  United States v. Gillion, 704 F.3d 284, 294 (4th Cir. 2012) (citing United States v. Reid, 523 F.3d 310, 317 (4th Cir. 2008)).  Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005) (citation omitted).

A defendant bringing a sufficiency challenge "must overcome a heavy burden."  United States v. Hotye, 51 F.3d 1239, 1245 (4th Cir. 1995).  The Court "may not overturn a substantially supported verdict merely because it finds the verdict unpalatable or determines that another, reasonable verdict would

6

be preferable," United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996); instead reversal for insufficiency must "be confined to cases where the prosecution's failure is clear," Burks v. United States, 437 U.S. 1, 17 (1978).

III.

Palomino-Coronado contends that the government failed to prove one of the elements of § 2251(a)—namely, that he acted for the purpose of producing a visual depiction.[3]

Section 2251(a) provides, in relevant part,

> "Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e) . . . if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means."

18 U.S.C. § 2251(a).

---

[3] A week prior to oral argument, the government filed a letter of supplemental authority asserting that Palomino-Coronado waived his purpose argument by not raising it during his Rule 29 motion. We are entitled to excuse a defendant's waiver in the district court if the government fails to properly and timely raise a waiver contention in its brief. See United States v. Ashford, 718 F.3d 377, 381 (4th Cir. 2013); United States v. Carthorne, 726 F.3d 503, 509 n.5 (4th Cir. 2013). In "the interests of fairness and the integrity" of our procedural rules, we hold that the government waived its waiver argument. See Ashford, 718 F.3d at 381.

7

As the text indicates, § 2251(a) contains a specific intent element: the government was required to prove that production of a visual depiction was a purpose of engaging in the sexually explicit conduct. Id.; see United States v. Lebowitz, 676 F.3d 1000, 1013 (11th Cir. 2012). "It is simply not enough to say 'the photo speaks for itself and for the defendant and that is the end of the matter.'" United States v. Crandon, 173 F.3d 122, 129 (3d Cir. 1999) (discussing the purpose requirement in the related cross-reference under U.S.S.G. § 2G2(c)(1)). That is, a defendant must engage in the sexual activity with the specific intent to produce a visual depiction; it is not sufficient simply to prove that the defendant purposefully took a picture. Nonetheless, courts do not require that a defendant be single-minded in his purpose to support a conviction under § 2251(a). E.g., Lebowitz, 676 F.3d at 1013; United States v. Morales-de Jesus, 372 F.3d 6, 21–22 (1st Cir. 2004); see also United States v. Cox, 744 F.3d 305, 309 (4th Cir. 2014) (considering "purpose" in the context of the application of a cross-reference under § 2G2.1(c)(1) of the sentencing guidelines governing production of some child pornography offenses).

We have not previously considered a challenge to the sufficiency of the evidence in a conviction under § 2251(a). Courts have sometimes been able to rely on direct evidence indicating a defendant's purpose. E.g., Lebowitz, 676 F.3d at

8

1013. In Lebowitz, for example, the minor testified that he and the defendant "discussed videotaping a sexual encounter prior to the recording." Id.; see also United States v. Lee, 603 F.3d 904, 918 (11th Cir. 2010) (holding that the defendant's description of "how many photographs he wanted of each girl" and "how he wanted the girls to pose" contributed to the reasonableness of the jury's finding that he intended to use the minors in the production of child pornography).

More often, however, courts are presented only with circumstantial evidence to show that a defendant acted with purpose. For example, defendants' actions, instructions, and descriptions of the visual depictions produced or to be produced might indicate purpose. E.g., Morales-de Jesus, 372 F.3d at 21–22. In Morales-de Jesus, finding the evidence sufficient, the First Circuit pointed to the fact that the defendant "actively concealed from the minor the fact that he was videotaping her." Id. at 21. The defendant also gave "specific instructions regarding certain positions he wanted her to assume relative to the camera, instructed her on what to say while the camera recorded their activities, and used a remote control to zoom the camera in and out while they were having sex." Id. at 21–22; see also United States v. Sirois, 87 F.3d 34, 42 (2d Cir. 1996) (holding that the jury could have inferred intent in part based on the defendant's "direct[ing] the participants to move their

9

sexual activity to different parts of the lean-to, so that he could more easily videotape them").

Courts have also found the number of sexually explicit recordings or depictions indicative of purpose. E.g., United States v. Ortiz-Graulau, 526 F.3d 16, 19 (1st Cir. 2008). In Ortiz-Gralau, the defendant had taken over fifty pictures depicting sexual contact between him and a minor or of the minor in a sexually explicit position. Id. at 18. The First Circuit found that the "number of photographs, many of sexually explicit poses, permit[ted] a strong inference that some of the conduct occurred in order to make the photographs." Id. at 19 (citing Morales-de Jesus, 372 F.3d at 22); see also Morales-de Jesus, 372 F.3d at 22 ("[A] reasonable jury also could infer that since Morales taped sexual encounters with the minor more than once, he induced the girl to engage in sex acts for the purpose of creating videotapes of their encounters.").

Finally, courts have considered evidence of "purposeful conduct" surrounding the photographic or video equipment used. E.g., Lebowitz, 676 F.3d at 1013; see also Morales-de Jesus, 372 F.3d at 22. In Lebowitz, the Eleventh Circuit cited evidence that the defendant brought the camera and a tripod with him, carried them through the minor's bedroom window, and set them up. 676 F.3d at 1013. Moreover, evidence showed that "[t]he sexual encounter occurred in [the minor's] bedroom only because

10

there was not room for the recording equipment in Lebowitz's car." Id. Meanwhile, in Morales-de Jesus, "[a]fter the defendant had taken the minor to a motel room to have sex for the fourth time, he returned to his car and retrieved the recording equipment that he kept there." 372 F.3d at 22. The First Circuit also found that the fact that the defendant "kept sexual aids in the same bag with the camera" might also have been enough for the jury to find that the defendant had planned to videotape the encounters. Id.; see also Sirois, 87 F.3d at 37, 42 (finding relevant that both actors had brought recording equipment: one a camera and a videorecorder and the other another camera).

Here, the evidence produced at trial does not support the conclusion that Palomino-Coronado engaged in sexual activity with B.H. for the purpose of producing a picture. No direct evidence or statements indicating intent were offered. There was no testimony that Palomino-Coronado gave any instruction or direction to B.H. as part of their sexual encounter that would indicate purpose. See, e.g., Morales-de Jesus, 372 F.3d at 21–22; Sirois, 87 F.3d at 42.

All that the record shows is that Palomino-Coronado had engaged in sexual activity with B.H. on more than one occasion; that he had taken several non-sexually explicit pictures of her with his cell phone in his basement; and that one sexually

11

explicit picture was taken, in which B.H. identified herself and Palomino-Coronado as the two people depicted. Without more, these facts do not support the conclusion that Palomino-Coronado engaged in sexual activity with B.H. in order to take a picture. To hold otherwise would eliminate the specific intent requirement, turning § 2251(a) into a strict liability offense.

We find it significant here that only one photograph was taken and subsequently deleted.[4] The government argues that there is no requirement that a defendant take a certain quantity of images or engage in a certain amount of preparation to determine whether he has acted for the purpose of producing a visual depiction. We agree as a general matter. Although, when pressed at oral argument, the government could not provide any authority upholding a conviction challenging the specific intent element where only one photograph was taken.

In this instance, where Palomino-Coronado engaged in sexual activity with B.H. over many months, the fact that only one image was produced militates against finding that his intent in doing so was to take a picture. The single photo is not evidence that Palomino-Coronado engaged in sexual activity with B.H. to take a picture, only that he engaged in sexual activity

---

[4] We note that the record did not indicate at what point the photograph was deleted, whether it was immediately after it was taken or sometime later.

12

with B.H. and took a picture.  Cf. Crandon, 173 F.3d at 130 (acknowledging that "[s]et in context," the fact that the defendant had taken close to fifty pictures of the minor, only two of which were sexual in nature, "could support [the defendant's] contention that his purpose in taking the photos was the memorialization of their time together or his love for her—a purpose other than producing sexually explicit material"). To be sure, a situation might well present itself where only one photograph was taken but where there was other evidence of purpose, and we do not hold that a sufficiency challenge would necessarily fail in that instance.  But that is not this case.

The government contends that Palomino-Coronado's frequent use of the camera on his cell phone showed that he "regularly and intentionally used his phone to take pictures of all aspects of his life."  The government also asserts that the fact that the photo at issue focused on Palomino-Coronado's genital area as he engaged in sexual activity with B.H. demonstrates that the photo was not unintentionally or inadvertently captured.

But the government does little to explain how these conclusory statements indicate that Palomino-Coronado initiated the sexual activity with B.H. for the purpose of producing the picture.  Instead, the government appears to conflate the voluntary act of taking the picture with the specific intent required under the statute.

13

The fact that Palomino-Coronado brought his cell phone with him to the basement does not support a finding of purpose. Palomino-Coronado's use of his cell phone to take pictures is a far cry from the tripod and other recording equipment used to support purpose in other cases. See, e.g., Lebowitz, 676 F.3d at 1013; Morales-de Jesus, 372 F.3d at 22. Whereas those devices demonstrate some sort of forethought, planning, or intent, the mere presence of a cell phone is not evidence of purpose. Cell phones are now ubiquitous, especially for teenagers, and almost always within reach. We do not conclude that use of a cell phone will never be evidence of purpose under § 2251(a); instead, we simply hold that Palomino-Coronado's use of his cell phone in this instance does not meet the specific intent requirement under the statute.

IV.

For these reasons, we hold that the government adduced insufficient evidence to show that Palomino-Coronado acted for the purpose of producing a visual depiction. The district court thus erred in denying Palomino-Coronado's motion for judgment of acquittal. Therefore, we reverse the district court's ruling and vacate Palomino-Coronado's conviction.

REVERSED AND VACATED

14