# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed On: December 21, 2018

No. 16-3078

UNITED STATES OF AMERICA,
APPELLEE

v.

FRANKLIN JOVANY TORRES,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(1:15-cr-00135-1)

———

On Petition for Panel Rehearing

———

Before: GRIFFITH and PILLARD, *Circuit Judges*, and
WILLIAMS\*, *Senior Circuit Judge*

## O R D E R

Upon consideration of appellant's petition for panel rehearing filed on August 16, 2018, and the response thereto, it is

**ORDERED** that the petition be denied.

### Per Curiam

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
Ken Meadows
Deputy Clerk

\* A statement by Senior Circuit Judge Williams, dissenting from the denial of the petition, is attached.

WILLIAMS, *Senior Circuit Judge*, dissenting from the denial of rehearing:

18 U.S.C. § 2251(a) is but one part of Congress's broader scheme to combat child sexual abuse. It singles out for especially heavy penalties those defendants who not only induce a minor to engage in "sexually explicit conduct," but who do so "*for the purpose of*" producing pornography. *Id.* (emphasis added). Related provisions target possession of child pornography and sex with a minor—see, e.g., *id.* § 2252; D.C. Code § 22–3009.01—crimes for which Franklin Torres has already received ten years' imprisonment, see J.A. 22.

This appeal raises two important and recurring issues about the "purpose" element of § 2251(a). The first concerns the requirement that pornographic intent must have been "*the dominant motive*" of the defendant's sexual conduct. 894 F.3d 305, 319–20 (D.C. Cir. 2018) (Williams, J., dissenting) (quoting *Mortensen v. United States*, 322 U.S. 369, 374 (1944)). As my dissent explains (at 320), the panel wrongly diluted this requirement by adopting the oxymoronic notion of "a" dominant motive, see *id.* at 315 (majority opinion). Other circuits, however, had already taken this path, see, e.g., *United States v. Lebowitz*, 676 F.3d 1000, 1014 (11th Cir. 2012), so the panel's decision—wrong as it is—cannot be said to have created a circuit split.

But on the second issue, the panel broke new ground. Until now, the courts of appeals have insisted (rightly, in my view) that the government link the defendant's "purpose" to his "sexually explicit conduct," taken as a coherent whole. Our sister circuits have thus resisted any analysis under which an encounter's photographic purpose is proven simply by the picture-taking itself. See *United States v. Palomino-Coronado*, 805 F.3d 127, 132 (4th Cir. 2015). Instead they have rested on evidence connecting the defendant's photographic purpose to a

more broadly conceived encounter—evidence that he sent the victim money for a webcam, *United States v. Pierson*, 544 F.3d 933, 939 (8th Cir. 2008); obtained a Polaroid camera, *United States v. Raplinger*, 555 F.3d 687, 693 (8th Cir. 2009); requested, in advance, a specific number of pictures, *United States v. Lee*, 603 F.3d 904, 910, 918 (11th Cir. 2010); broke off the encounter to retrieve recording materials from his car, *United States v. Morales-de Jesús*, 372 F.3d 6, 21–22 (1st Cir. 2004); lugged a camera and tripod through a bedroom window, *Lebowitz*, 676 F.3d at 1013; or chose a location based on its suitability for filming, *id.*; *United States v. Sirois*, 87 F.3d 34, 42 (2d Cir. 1996).

What courts have not done is arbitrarily break down a defendant's conduct millisecond by millisecond—disaggregating a single sexual encounter into "different instances of sexually explicit conduct," assigning a "distinct purpose[]" to each minutely defined stage. 894 F.3d at 314. For good reason. Apart from running (as my dissent explains at 322) headlong into *Mortensen*, this "artificial and unrealistic view of the nature and purpose," 322 U.S. at 376, of sexual intercourse all but reads the "purpose" element out of the statute—for lovers and predators alike. As the panel sees it, any picture-snapping during an assembly of two or more people (including at least one minor) that displays "any person['s]" pubic region will be virtually certain to support the inference that *that* instance of "sexually explicit conduct"—a so-called "lascivious exhibition"—was "for the purpose of" producing pornography. See 18 U.S.C. §§ 2251(a), 2256(2)(A)(v). That is so even when the "lascivious exhibition" was but one part of a continuous sexual encounter whose overall purpose—pleasure, perhaps—was plainly not photography.

To downplay the novelty of its decision, the panel plucks a few words from *United States v. Ortiz-Graulau*, 526 F.3d 16 (1st Cir. 2008), arguing that under that opinion the "jury needed

to find only that 'at least some of' [the] sexual conduct had the requisite purpose, not all of it." 894 F.3d at 314 (quoting *Ortiz-Graulau*, 526 F.3d at 19). But *Ortiz-Graulau* (it seems to me) concerned not "some of" the disaggregated steps of a single sexual encounter—as the majority would have it—but "some of" the sexual encounters themselves, viewed as a coherent whole. The case involved, after all, the defendant's six-month long "marital-like" relationship with a minor and the numerous sexually explicit pictures that he had developed on "several occasions." 526 F.3d at 17–18.

The panel denies any conflict with *Palomino-Coronado*, 805 F.3d 127—but only halfheartedly: "That case is not binding on this court, and we need not opine on its correctness . . . ." 894 F.3d at 313. There, our colleagues on the Fourth Circuit were surely correct in saying that a defendant's "use of his cell phone to take pictures"—like Torres's use here—"is a far cry from the tripod and other recording equipment used to support purpose in other cases." 805 F.3d at 133. "Whereas those devices demonstrate some sort of forethought, planning, or intent," *id.*, the use of a cell phone— now ubiquitous in our society—shows only that a defendant "engaged in sexual activity with [a minor] *and* took a picture," not that he "engaged in sexual activity . . . *to* take a picture," *id.* at 132.

\* \* \*

In its rush to condemn Torres, the panel rests on a cascade of presumptions that ignore—or simply flip—those on which we normally rely.

Take the panel's treatment of a supposed ambiguity. Does the statutory phrase "sexually explicit conduct" refer to the defendant's "behavior . . . on a specified occasion," *Webster's*

*Third New International Dictionary* 474 (1981) (defining "conduct"), or to any disaggregated "instance" of behavior within a single encounter? The panel picks the latter—in part to avoid the difficulty of "discern[ing]" one sexual encounter from another. See 894 F.3d at 314–15 ("[W]hat if [the sexually explicit conduct] occurred at different times throughout an afternoon? Or in a course of conduct lasting several days or a weekend?"). That intellectual challenge, though, doesn't seem enough to justify the panel's swap: out goes the usual understanding that we resolve an "ambiguity concerning the ambit" of a statute "in favor of lenity," *Cleveland v. United States*, 531 U.S. 12, 25 (2000) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)); in comes a preference for severity.

The panel's attempt to skirt *Mortensen*, 322 U.S. 369, is similarly misguided. In that case, the Supreme Court interpreted the intent element of the original Mann Act, which like § 2251 targeted conduct undertaken "for the purpose of" some aim. Pub. L. No. 61-277, § 2, 36 Stat. 825, 825 (1910) (codified as amended at 18 U.S.C. §§ 2421–2424). The Court rejected precisely the type of "arbitrary splitting" of the prohibited conduct—there, interstate transport—that the panel adopts here. 894 F.3d at 322 (Williams, J., dissenting) (quoting *Mortensen*, 322 U.S. at 375); see also *id.* at 324.

In limiting *Mortensen*, the panel finds it "doubtful" that Congress intended the "modern ban" in § 2251 to "be interpreted in lockstep with the Mann Act's early-Twentieth-Century prohibition." 894 F.3d at 315–16. But the doubt is misplaced. Our system typically presumes that when Congress adopts a phrase from an earlier statute it was aware of the Court's prior interpretation of the phrase "and intended for it to retain its established meaning." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1762 (2018); see also, e.g., *Keene Corp. v. United States*, 508 U.S. 200, 212 (1993). Even the leading scholarly work challenging this presumption on

empirical grounds recognizes its considerable accuracy where the statutes in question are closely related. See Abbe R. Gluck & Lisa Schultz Bressman, *Statutory Interpretation from the Inside—An Empirical Study of Congressional Drafting, Delegation, and the Canons: Part I*, 65 Stan. L. Rev. 901, 932 fig.4 (2013). And here, closely related they are. Congress plainly had the Mann Act in mind while enacting § 2251: it revised the former *in the same bill* that created the latter. See Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, §§ 2–3, 92 Stat. 7, 7–9 (1978) (codified as amended at 18 U.S.C. §§ 2423, 2251). (Of course the presumption may "fulfill another purpose—a self-fulling purpose, so to speak: [it] promote[s] clearer drafting" by encouraging legislative drafters to use language consistently. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 51 (2012).)

The panel also discounts *Mortensen* as resting on a desire to avoid criminalizing "otherwise-benign conduct," like crossing state lines. 894 F.3d at 316. But the need for a mens rea requirement hardly depends on that problem alone. There is no principled difference between the injustice of "(1) punishing a person who, but for the [court's downplay of the mens rea element] would have received zero punishment . . . and (2) punishing with *more years of imprisonment* a person who, but for the [court's downplay of the mens rea element] would still have received substantial punishment." See *United States v. Burwell*, 690 F.3d 500, 544 (D.C. Cir. 2012) (Kavanaugh, J., dissenting) (emphasis added) (quoting Leonid Traps, Note, *"Knowingly" Ignorant: Mens Rea Distribution in Federal Criminal Law After* Flores-Figueroa, 112 Colum. L. Rev. 628, 661 (2012)).

Finally, the panel emphasizes, "[w]e are dealing not with interstate travel" as in *Mortensen*, "but with" child sex abuse and pornography. 894 F.3d at 316. The contrast is hardly apt.

Both statutes deal with a serious social problem, on which Congress can take action because of the problem's links to a federal interest—interstate commerce or travel. But the Court has seen Congress as "traditionally [] reluctant to define as a federal crime conduct readily denounced as criminal by the States." *United States v. Bass*, 404 U.S. 336, 349 (1971); see also *id*. ("[W]e will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction."); *Cleveland*, 531 U.S. at 25 (same). There seems no more reason to read Congress's action broadly in this case than in *Mortensen*.

\* \* \*

In sum, I respectfully disagree with the panel's contrary conclusion—one permitting the government to secure a conviction by arbitrarily divvying up events that were part of a single, continuous encounter. And to bring our reading of § 2251 back into line with those of our sister circuits, I would grant the petition for rehearing. I therefore respectfully dissent.