**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 20-4438**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

JERRY HAYMON, a/k/a Bear,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, Senior District Judge.  (1:19-cr-00214-LO-1)

Submitted:  July 30, 2021                           Decided:  October 1, 2021

Before MOTZ, DIAZ, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Paul P. Vangellow, PAUL P. VANGELLOW, PC, Falls Church, Virginia, for Appellant. Raj Parekh, Acting United States Attorney, Philip Alito, Assistant United States Attorney, Daniel T. Young, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jerry Haymon, IV, was convicted after a jury trial of conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a), 846. The district court sentenced Haymon to the mandatory minimum sentence of 120 months in prison. Haymon appeals, asserting numerous challenges to the criminal judgment. We affirm.

Viewed in the light most favorable to the Government, *United States v. Palomino-Coronado*, 805 F.3d 127, 130 (4th Cir. 2015), the evidence established that, from 2013 to 2017, Haymon, who resided in California, provided multi-kilogram quantities of marijuana to Nasiru Carew and Rashourn Niles for distribution in Virginia, Maryland, and Washington, D.C. The participants communicated extensively by text messages. Niles and Carew contacted Haymon in California to request shipments of marijuana. Haymon typically shipped packages containing marijuana through the mail to different addresses provided by Niles and Carew. On other occasions, Haymon would send packages containing marijuana by United Parcel Services or Federal Express. Niles and Carew paid for the marijuana shipments by money order, mailing cash, depositing money in various bank accounts provided by Haymon, or personally delivering money to Haymon.

I. **Exclusion of evidence of California law**

Haymon first contends that the district court abused its discretion by precluding him from introducing evidence concerning California law related to medical marijuana. He asserts that California legalized the use of medical marijuana and that his conduct was

lawful under California law and therefore he did not have the requisite criminal intent to commit the conspiracy offense with which he was charged.

The fact that a state decriminalized possession of marijuana does not provide a defense to a charged violation of federal drug laws. *See United States v. Henry*, 673 F.3d 285, 291-92 (4th Cir. 2012). Rather, "[m]arijuana remains illegal under federal law, even in those states in which medical marijuana has been legalized." *United States v. Canori*, 737 F.3d 181, 184 (2d Cir. 2013) (citations omitted). Thus, we find no abuse of discretion by the district court in excluding evidence of California law. *See United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2020) (providing standard).

Haymon also contends that the district court misinformed the jury about California's marijuana laws. The district court correctly instructed the jury that California state laws were irrelevant and inapplicable to this case. Thus, any purported error in the district court's characterization of California law was harmless. *See United States v. Benson*, 957 F.3d 218, 230 (4th Cir.) (providing that juries are presumed to follow instructions), *cert. denied*, 141 S. Ct. 934, *and cert. denied*, 141 S. Ct. 935 (2020),

Haymon argues that, because his possession of marijuana was lawful in California, he lacked the requisite intent to violate federal law and the district court's refusal to admit evidence of California law deprived him of the opportunity to present his defense of mistake of law or fact. We reject this argument. "To prove conspiracy to possess [controlled substances] with intent to distribute, the Government must establish that: (1) an agreement to possess [controlled substances] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant

3

knowingly and voluntarily became a part of this conspiracy." *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996). Contrary to Haymon's arguments, the Government did not need to prove that Haymon intended to commit a crime or that he knew that his conduct was illegal. *See United States v. Ali*, 735 F.3d 176, 186 (4th Cir. 2013) (holding that the *mens rea* of § 841(a) only "requires specific intent to distribute a controlled substance or to possess with intent to distribute a controlled substance").

Additionally, Haymon's contention that his possession of marijuana was lawful under California law, and therefore he lacked the specific intent to violate 21 U.S.C. § 841(a), is not a defense to a charge under the Controlled Substances Act. *See Ali*, 735 F.3d at 186 (holding that prosecutor need not prove that a defendant intended to violate the law in order to obtain a conviction under the Controlled Substances Act); *see also United States v. Morales*, 14-10212, 680 F. App'x 548, 551 (9th Cir. Feb. 23, 2017) ("neither medical necessity nor mistake of law constitutes a defense to federal drug charges") (citing *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 490-91 (2001)).

We further conclude that Haymon's proffered defense of mistake lacked an evidentiary foundation and therefore the district court appropriately declined to give this instruction. *See United States v. Dornhofer*, 859 F.2d 1195, 1199 (4th Cir. 1988). Rather than supporting Haymon's claim of a lack of intent, the record contains overwhelming evidence that Haymon knew that his conduct was unlawful and that he and his coconspirators used elaborate measures to avoid detection by law enforcement officials.

II.     **Sufficiency of the evidence**

Haymon next contends that the district court erred by denying his motion for judgment of acquittal in which he argued that the evidence was insufficient to prove that he possessed marijuana with the intent to distribute and that he intended to conspire with others to distribute marijuana. He maintains that any marijuana he possessed was for personal use, that the exclusion of California law deprived him of the ability to argue that he lawfully possessed the marijuana for personal use, and that he never formed the intent to join the conspiracy with the specific intent to distribute marijuana.

We review the trial court's denial of a motion for judgment of acquittal de novo, *United States v. White*, 810 F.3d 212, 228 (4th Cir. 2016), and review "challenge[s] to the sufficiency of the evidence de novo," *Palomino-Coronado*, 805 F.3d at 130. Viewing the evidence in the light most favorable to the Government, we conclude that there was substantial evidence to support the jury's verdict. *Id.* Carew, Niles, and other members of the drug distribution organization testified that Haymon obtained marijuana in California and shipped it to the East Coast, using several different methods of transport. Other members of the conspiracy would retrieve these packages and would pay Haymon in a variety of ways in order to avoid detection. Niles and Carew each considered Haymon a partner in these activities. The coconspirators' testimony was corroborated by electronic messages recovered from the participants' cell phones. These messages referred to numerous drug deals, elaborate shipping and payment arrangements, and measures taken to avoid detection by law enforcement. Because there was substantial evidence at trial that Haymon knowingly and voluntarily conspired with others to distribute marijuana, we

5

conclude that the district court did not err in denying Haymon's motion for judgment of acquittal.

We also find that there was sufficient evidence to support the jury's decision to attribute 1,000 kilograms or more of marijuana to Haymon. *See Palomino-Coronado*, 805 F.3d at 130. Niles testified that, from 2014 to 2016, Haymon provided him with approximately 15 pounds of marijuana per week. The Government estimated that this amounted to 2,160 pounds—or approximately 980 kilograms—over the course of the conspiracy. And Carew testified that, between 2013 and 2017, he purchased at least 1,883 pounds—or approximately 854 kilograms—of marijuana from Haymon. This testimony was supported by numerous text messages and by the corroborating testimony of other coconspirators. Although Haymon challenges Carew's and Niles' credibility, "[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994). Accordingly, we conclude that the jury's verdict was supported by the evidence and that the district court appropriately entered judgment in accordance with the jury's verdict.

**III. Jury issues**

During deliberations, the jury sent an inquiry to the court asking, "Who are the individuals that were walking in and out of the audience during the trials?" and "Do I have any reason to be concerned for my safety and overall welfare from being a part of this jury?" The court advised the jurors that the "persons in attendance during the trial have been courthouse personnel and law enforcement officers interested in the case," and that there was "no known safety risk to [them for] performing [their] duties [as jurors]."

6

Haymon contends that the district court erred by declining to poll the jury as to their concerns for their safety and whether this affected the verdict.

The Supreme Court has concluded that "any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is . . . deemed presumptively prejudicial." *Remmer v. United States*, 347 U.S. 227, 229 (1954)). We find, however, that the allegations here – of unknown persons walking in and out of the courtroom during the trial – do not rise to the level of a private communication or contact with a juror that would require further inquiry. *See United States v. Small*, 944 F.3d 490, 497 (4th Cir. 2019) (declining to question or excuse two jurors who complained that they were "watched" as they exited the jury room, concluding "'watching' can hardly be described as 'communication' or 'contact,' both of which imply an active exchange of information of some sort"), *cert. denied*, 140 S. Ct. 2644 (2020); *see United States v. Baptiste*, 596 F.3d 214, 220-21 (4th Cir. 2010) (declining to reach the question of whether stares from a crowd constituted unauthorized contact, reasoning that there was no evidence that the staring was likely to affect the verdict). Thus, we conclude that the district court did not abuse its discretion by declining to question the jury about any influence these persons may have had on their verdict. *See United States v. Johnson*, 657 F.2d 604, 606 (4th Cir. 1981) ("The trial court must be afforded wide discretion in handling matters relating to . . . the integrity of the jury.").

Haymon also speculates that the jury may have been influenced or intimidated as a result of the prosecutor's reference during Haymon's cross-examination to "armed individuals" picking up marijuana that had been sent to Carew. The trial court sustained

7

Haymon's objection to this reference and specifically stated, "There's no evidence of armed persons picking it up." We find that, in light of the strength of the evidence of Haymon's guilt, this isolated reference, which was immediately corrected by the trial judge, does not warrant reversal. *See United States v. Jones*, 471 F.3d 535, 542 n.2 (4th Cir. 2006). Additionally, the district court instructed the jury that any proposed testimony to which an objection was sustained was to be disregarded, and that questions and objections are not evidence. Because juries are presumed to follow the court's instructions, *Benson*, 957 F.3d at 230, Haymon cannot establish that this isolated reference to "armed individuals" prejudiced the jury.

IV.    **Buyer – Seller instruction**

Haymon argues that the district court erred in denying his request for a buyer-seller jury instruction. This court "review[s] for abuse of discretion the district court's denial of [a] proposed jury instruction[]." *United States v. Sonmez*, 777 F.3d 684, 688 (4th Cir. 2015). A buyer-seller instruction informs the jury that the mere purchase and sale of narcotics standing alone is insufficient to establish a conspiratorial agreement to distribute narcotics. *United States v. Mills*, 995 F.2d 480, 485 n.1 (4th Cir. 1993).

Evidence of a buyer-seller relationship, coupled with evidence of a "substantial quantity of drugs," is sufficient to establish a conspiracy. *United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008). The district court acts within its discretion if it does not give the buyer-seller instruction when the evidence reveals that the relationship between the alleged conspirators goes beyond a mere drug transaction. *Mills*, 995 F.2d at 485. Evidence of a continuing buy-sell relationship along with evidence of large quantities of

8

drugs or repeated transactions can offer further support of a conspiratorial agreement. *United States v. Hackley*, 662 F.3d 671, 679 (4th Cir. 2011).

In this case, the Government presented evidence of a continuous buy-sell relationship that involved regular transactions involving large quantities of marijuana over a period of several years. In addition, numerous text messages established that Haymon and Carew and Niles had an ongoing relationship. *See Hackley*, 662 F.3d at 679. Because the evidence revealed more than a simple drug transaction, the district court did not abuse its discretion by denying Haymon's request for a buyer-seller instruction. *See Sonmez*, 777 F.3d at 688.

We further conclude that the lack of a buyer-seller instruction did not impair Haymon's defense to the conspiracy charge. The district court instructed the jury that, in order to convict Haymon for conspiracy, it must find, beyond a reasonable doubt, that Haymon "knowingly and deliberately entered into an agreement to distribute [] controlled substances." The court also instructed the jury that "[m]erely associating with others and discussing common goals" and "merely being present at the place where a crime takes place or is discussed" is insufficient to establish that the person is a member of a conspiracy. We conclude that the lack of a buyer-seller instruction did not "seriously impair [Haymon's] defense," *see United States v. Lewis*, 53 F.3d 29 32 (4th Cir. 1995), and therefore find that the district court did not err in denying Haymon's request for a buyer-seller instruction.

V. **Evidentiary issues**

Haymon next contends that the district court erred by denying his motion to suppress evidence recovered from his cell phone. He argues that the Fresno Police Department retained his phone in violation of the terms of the state warrant and turned the phone over to the federal government in violation of state law. He also argues that the federal government seized his phone and its contents prior to the issuance of a federal search warrant.

In reviewing a district court's ruling on a motion to suppress, we review conclusions of law de novo and underlying factual findings for clear error. *United States v. Cloud*, 994 F.3d 233, 242 (4th Cir. 2021). "Because the district court denied [Haymon's] motion to suppress, [this Court] construe[s] the evidence in the light most favorable to the [G]overnment." *United States v. Clarke*, 842 F.3d 288, 293 (4th Cir. 2016) (internal quotation marks omitted).

Notwithstanding any potential errors by the state authorities in retaining Haymon's phone or turning it over to the federal authorities, because the investigators searched the contents of Haymon's phone pursuant to a facially valid federal search warrant the district court appropriately determined that the cell phone evidence was admissible under the good faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897, 913, 918-20 (1984). Additionally, we find that, in light of the overwhelming evidence supporting Haymon's guilt, any error in admitting evidence from Haymon's phone was harmless. *See Chambers v. Maroney*, 399 U.S. 42, 53 (1970) (applying harmless error analysis to admission of evidence taken in violation of the Fourth Amendment).

Haymon also contends that the destruction in 2013 or 2014 of the substance contained in packages seized by the United States Postal Inspection Services in connection with its investigation of Carew and which field-tested presumptively positive for marijuana, violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). Haymon contends that this substance "may not have been marijuana" and that his right to a fair trial was violated by admission of evidence as to the identity of the substance.

Because Haymon failed to raise these claims in the district court, our review is for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). "To establish eligibility for plain-error relief, a defendant must satisfy three threshold requirements." *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021). "First, there must be an error. Second, the error must be plain. Third, the error must affect substantial rights, which generally means that there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Id.* (internal quotation marks omitted). "If those three requirements are met, an appellate court may grant relief if it concludes that the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Success on a *Brady* claim requires "the proponent [to] show that the undisclosed evidence was (1) favorable to him either because it is exculpatory, or because it is impeaching; (2) material to the defense, *i.e.*, prejudice must have ensued; and (3) that the prosecution

11

had materials [or information] and failed to disclose them." *United States v. Taylor*, 942 F.3d 205, 225 (4th Cir. 2019).

With these standards in mind, we have reviewed the evidence and conclude that, in light of the overwhelming evidence of Haymon's involvement in a marijuana conspiracy, he cannot establish that any plain error resulted from the admission of evidence as to the identity of a substance that was seized and destroyed prior to the authorities' investigation of Haymon. *See Olano*, 507 U.S. at 735; *see United States v. Gomez*, 191 F.3d 1214, 1218 (10th Cir. 1999) (finding no discovery violation where drug evidence was destroyed before defendant was indicted and therefore the government was not in possession of evidence). Moreover, Haymon's speculation as to the accuracy of the field test does not establish a *Brady* violation. *See United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010).

VI.    **Conclusion**

We have reviewed the record and have determined that the district court did not err in any of the ways asserted by Haymon. Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*