**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4957

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LEILA VARETTA HECTOR, a/k/a Leila Varretta Hector, a/k/a Leila Varetta Hector-Dykes, a/k/a Rita Hector,

Defendant - Appellant.

No. 20-4052

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROY LEE DYKES,

Defendant - Appellant.

No. 20-6414

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LEILA VARETTA HECTOR, a/k/a Leila Varretta Hector, a/k/a Leila Varetta Hector-Dykes, a/k/a Rita Hector,

Defendant - Appellant.

---

No. 20-6467

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROY LEE DYKES,

Defendant - Appellant.

---

Appeals from the United States District Court for the Western District of Virginia, at Big Stone Gap.  James P. Jones, District Judge.  (2:18-cr-00003-JPJ-PMS-1; 2:18-cr-00003-JPJ-PMS-2)

---

Submitted:  January 31, 2022                    Decided:  February 9, 2022

---

Before MOTZ, AGEE, and HARRIS, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ON BRIEF:**  James R. Theuer, JAMES R. THEUER, PLLC, Norfolk, Virginia; Peter L. Goldman, SABOURA, GOLDMAN & COLOMBO, P.C., Alexandria, Virginia, for Appellants.  Daniel P. Bubar, Acting United States Attorney, Roanoke, Virginia, M. Suzanne Kerney-Quillen, Special Assistant United States Attorney, OFFICE OF THE

2

UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Roy Lee Dykes and Leila Varretta Hector (collectively, "Defendants"), a married couple, of conspiring to distribute and possess with intent to distribute a variety of controlled substances (Count 1s), in violation of 21 U.S.C. §§ 841(b)(1), 846. The jury additionally convicted Defendants of distribution and possession with intent to distribute, "as a principal and aider and abettor," more than 5 grams of methamphetamine (Count 16s), in violation of 21 U.S.C. § 841(a)(1), and Dykes alone of 16 additional counts of distribution and possession with intent to distribute various controlled substances. Defendants appeal from their convictions and respective sentences, which both included orders of forfeiture and a money judgment.

On appeal, Defendants argue that the district court erred by (1) improperly instructing the jury; (2) denying their motions for mistrials and their postjudgment and postsentencing motions for a new trial; and (3) entering a money judgment. Dykes additionally challenges the district court's denial of a motion in limine to exclude certain firearms evidence, and Hector challenges the sufficiency of the evidence to support her conviction on Count 16s. For the reasons set forth below, we affirm.

I.

First, Dykes argues that the district court erred in denying his motion in limine in which he sought to exclude evidence of firearms and ammunition recovered during a search of Defendants' home. Dykes contends that the evidence was improper character evidence unrelated to the charged crimes. The Government, on the other hand, argues that the evidence was intrinsic to the charged drug offenses because it was directed toward showing

4

Dykes' involvement in the drug trade.  We review the denial of a motion in limine for abuse of discretion.  *United States v. Hornsby*, 666 F.3d 296, 309 (4th Cir. 2012).  We further review evidentiary rulings for harmless error and will not reverse the district court's ruling so long as we "can say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error."  *United States v. Burfoot*, 899 F.3d 326, 340 (4th Cir. 2018) (internal quotation marks omitted).

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  "The Rule 404(b) inquiry, however, applies only to evidence of other acts that are extrinsic to the one charged.  Acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence."  *United States v. Palacios*, 677 F.3d 234, 244-45 (4th Cir. 2012).  "[U]ncharged conduct is intrinsic [if it] arose out of the same series of transactions as the charged offense, or if evidence of the uncharged conduct is necessary to complete the story of the crime on trial."  *United  States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) (cleaned up).  Regarding conspiracy offenses in particular, "the [G]overnment is permitted to present evidence of acts committed in furtherance of the conspiracy even though they are not all specifically described in the indictment."  *Palacios*, 677 F.3d at 245 (internal quotation marks omitted).

It is well established that firearms are "tools of the trade" in drug trafficking.  *United States v. Manigan*, 592 F.3d 621, 629 (4th Cir. 2010); *see United States v. Lomax*, 293 F.3d

5

701, 705 (4th Cir. 2002) (describing ways firearms may further drug trafficking in context of determining whether firearm had requisite connection to drug trafficking to support § 924(c) offense); *United States v. Ricks*, 882 F.2d 885, 892 (4th Cir. 1989) ("[E]vidence of firearms is relevant in narcotics conspiracy cases."). A Government witness testified, based on his training and experience, to the connection between weapons and the drug trade, and Dykes himself admitted that he had previously traded drugs for a firearm. Accordingly, we conclude that the district court did not abuse its discretion in denying Dykes' motion in limine and in admitting the challenged evidence.

## II.

Next, Dykes and Hector each challenge the district court's jury instructions. Dykes contends that the court erred by declining to issue a jury instruction on his proffered public authority defense. Hector argues that the court erred by failing to fully instruct the jury on the elements of a drug conspiracy. We discern no error in the court's instructions.

## A.

The "public authority defense" is an affirmative defense that requires a defendant to establish that he reasonably relied on the actual authority of a government official to authorize his otherwise illegal actions. *United States v. Fulcher*, 250 F.3d 244, 253-54 (4th Cir. 2001) (explaining that a defendant's alleged reliance on apparent authority of official is insufficient). At trial, Dykes sought to argue that he conducted his illicit drug activities on the orders of a Drug Enforcement Administration ("DEA") agent named Ronnie Baffo. "A defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *United States v. Ricks*,

6

573 F.3d 198, 200 (4th Cir. 2009) (cleaned up).  However, where there is insufficient evidence to support an element of an affirmative defense, the district court "can refuse to instruct the jury on the . . . defense." *United States v. Sarno*, 24 F.3d 618, 621 (4th Cir. 1994).  "A district court's refusal to instruct the jury on . . . a defense presents a question of law that we review de novo." *Ricks*, 573 F.3d at 200 (citing *United States v. Perrin*, 45 F.3d 869, 871 (4th Cir. 1995)).

After Dykes testified at trial that he had been acting as a confidential informant for Baffo, the Government presented evidence that Baffo did not exist; that Dykes had never served as a DEA informant; and that the DEA does not provide drugs to informants for distribution.  In declining to instruct the jury on the public authority defense, the district court explained that even if the jury were to believe Dykes' refuted testimony, he had not produced any evidence that Baffo had the actual authority to authorize him to engage in otherwise criminal acts.  Because relying on the apparent authority of a government agent is insufficient as a matter of law to establish a public authority defense, *see Fulcher*, 250 F.3d at 253-54, the district court did not err in declining to instruct the jury on the defense.

B.

Next, Hector argues that the district court reversibly erred by failing to include "interdependence" as an essential element of a drug conspiracy in its instructions to the jury.  *See United States v. Stewart*, 256 F.3d 231, 250 (4th Cir. 2001) (listing elements of conspiracy offense as "(1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary

7

involvement, and (4) interdependence among the alleged conspirators"). *But see United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en banc) (listing elements of conspiracy offense as "(1) an agreement to [accomplish the unlawful drug activity] existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy").

A jury instruction is not erroneous if, "in light of the whole record, [it] adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *United States v. Miltier*, 882 F.3d 81, 89 (4th Cir. 2018). Where, as here, the defendant failed to object in the district court, we review for plain error. *United States v. Cowden*, 882 F.3d 464, 475 (4th Cir. 2018). To demonstrate plain error, Hector must show that an error: (1) occurred, (2) was plain, and (3) affected her substantial rights. *Id.* Even if Hector meets this standard, we will exercise our discretion to correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (cleaned up).

The fact that *Stewart* and *Burgos* articulate the elements of conspiracy differently does not automatically render them inconsistent. *See United States v. Ray*, 61 F. App'x 37, 57 (4th Cir. 2003) (No. 00-4409) (argued but unpublished) (describing the cases as "two equally correct formulations of the same basic elements of conspiracy"). The key inquiry, then, is whether the jury instructions "adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Miltier*, 882 F.3d at 89. Here, the court explained that in order to convict Defendants of the charged conspiracy, the jury needed to find:

8

> [(1)] That at some time during the dates charged, two or more persons entered into an agreement or understanding; [(2)] That the purpose or object of the agreement was to do one or more of the criminal purposes charged; and [(3)] That the defendant voluntarily joined the conspiracy knowing of its purpose and intending to help accomplish that purpose.

(J.A. 1999).[1] The court also advised the jury that mere presence at a crime scene was insufficient to establish a conspiracy. These instructions sufficiently informed the jury of the necessary elements of a conspiracy and were neither misleading nor confusing. Accordingly, the district court did not plainly err in instructing the jury.

III.

Hector next challenges the sufficiency of the evidence supporting her conviction on Count 16s for distribution and possession with intent to distribute more than 5 grams of methamphetamine "as a principal and aider and abettor." She contends that the Government failed to establish more than her "mere presence" at the transaction at issue. Because Hector did not file a Fed. R. Crim. P. 29 motion for a judgment of acquittal in the district court, we review this claim for plain error only. *United States v. Wallace*, 515 F.3d 327, 331-33 (4th Cir. 2008).

"A defendant bringing a sufficiency challenge must overcome a heavy burden," as reversal is "confined to cases where the prosecution's failure is clear." *United States v. Palomino-Coronado*, 805 F.3d 127, 130 (4th Cir. 2015) (internal quotation marks omitted). We will uphold a jury's verdict if, viewing the evidence in the light most favorable to the Government, substantial evidence supports it. *Burfoot*, 899 F.3d at 334. In reviewing the

---

[1] "J.A." refers to the joint appendix filed by the parties in this appeal.

9

evidence, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 855 F.3d 265, 268 (4th Cir. 2017) (internal quotation marks omitted).

To convict a defendant of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), the Government must prove "that a defendant (1) possessed a controlled substance; (2) knew of the possession; and (3) intended to distribute the controlled substance." *United States v. Ath*, 951 F.3d 179, 188 (4th Cir.), *cert. denied*, 140 S. Ct. 2790 (2020).  A conviction for distribution of a controlled substance requires proof that "(1) the defendant knowingly or intentionally distributed the controlled substance alleged in the indictment, and (2) at the time of such distribution the defendant knew that the substance distributed was a controlled substance under the law." *United States v. Howard*, 773 F.3d 519, 526 (4th Cir. 2014) (cleaned up).  "A defendant is guilty of aiding and abetting if [she] has knowingly associated [herself] with and participated in the criminal venture." *Burgos*, 94 F.3d at 873 (internal quotation marks omitted).

> Participation in every stage of an illegal venture is not required, only participation at some stage accompanied by knowledge of the result and intent to bring about that result.  The same evidence establishing a defendant's participation in a conspiracy may support a conclusion that a defendant participated in the principal's unlawful intent to possess and distribute drugs, thereby proving guilt of aiding and abetting as well.

*Id.* (cleaned up).

Here, the jury heard testimony from a coconspirator, James Cleghorne, that Hector "was the money" in the charged conspiracy, explaining that "[n]othing was taken care of, nothing was done that didn't at least get asked or brought up to [Hector.]"  (J.A. 663).

10

Cleghorne further testified that he had sold methamphetamine to Hector on multiple occasions and that Hector also provided him with oxycodone and hydrocodone and would deduct the cost of the drugs from Cleghorne's pay for construction work he performed for Defendants. There was also evidence that Dykes referred customers seeking prescription pills to Hector.

Although Dykes testified that he kept Hector out of his narcotics business, he simultaneously stated that Hector would collect drug money on his behalf because Dykes believed that she was protected by his alleged "agreement" with Baffo. The jury also heard testimony that Hector routinely exited Dykes' vehicle immediately before a drug sale and returned to the vehicle immediately after the sale had been completed; a Government witness testified that this was so routine that law enforcement officers considered it "a signal" that a drug sale was about to occur. Specifically with regard to the sale of methamphetamine charged in Count 16s, Hector accompanied Dykes to Virginia in a vehicle containing over 80 grams of methamphetamine, and she falsely told investigators that the almost $5,000 in marked bills from the sale, which were recovered from her purse, was gambling money.

The jury was explicitly instructed that mere presence at the scene of a crime was insufficient to establish aiding and abetting liability, and the jury is presumed to have followed this instruction. *United States v. Zelaya*, 908 F.3d 920, 930 (4th Cir. 2018). Viewing the evidence in the light most favorable to the Government, a rational factfinder "could have found the essential elements of the crime beyond a reasonable doubt."

11

*Robinson*, 855 F.3d at 268 (internal quotation marks omitted).  Hector has therefore failed to establish plain error in the jury's verdict on the basis of insufficient evidence.

IV.

During trial, Dykes and Hector each moved for a mistrial as the result of a Government witness's statement.  In response to defense counsel's question on cross-examination that "[Hector] never admitted knowledge of what her husband did, did she?", the witness responded,

> No, she did not.  She just said that she knows he did things and that she was attracted to him because he'd been in prison before and was kind of a bad guy.  But that as far as specific knowledge of this activity, she just said that she tried to mind her own business.

(J.A. 601).  Although neither Dykes nor Hector objected to the testimony, the district court immediately issued a curative instruction, telling the jury to ignore the witness's answer beyond his acknowledgment that Hector had never admitted to the knowledge.  The district court denied the motions for mistrials, and Defendants subsequently filed postjudgment motions for a new trial on the same ground, which the court also denied.  Defendants challenge the denial of their respective motions.  In addition, Defendants challenge the denials of additional motions for a new trial on the basis of new evidence.

Under the Federal Rules of Criminal Procedure, "[a] district court retains discretion to grant a new trial if doing so is in the interest of justice."  *United States v. Millender*, 970 F.3d 523, 531 (4th Cir. 2020) (internal quotation marks omitted); *see* Fed. R. Crim. P. 33(a).  However, "[a] trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when

12

the evidence weighs heavily against it." *Burfoot*, 899 F.3d at 340 (internal quotation marks omitted). We review both "a district court's denial of a motion for a mistrial and for a new trial for abuse of discretion." *United States v. Saint Louis*, 889 F.3d 145, 155 (4th Cir. 2018). In order to establish an abuse of discretion, Defendants must show prejudice; prejudice does not "exist[], however, if the jury could make individual guilt determinations by following" cautionary instructions given by the court. *United States v. Wallace*, 515 F.3d 327, 330 (4th Cir. 2008). When cautionary instructions are given, "[w]e presume that juries follow [them.]" *United States v. Johnson*, 587 F.3d 625, 631 (4th Cir. 2009).

## A.

Dykes contends that the district court's curative instruction following the witness's statement was "vague and amorphous" and failed to properly guard against prejudice. Hector similarly argues that the comment denied her a fair trial by unfairly placing her character into evidence. The statement, although unfortunate, was a "singular stray reference" to Dykes' prior incarceration. *See United States v. Smith*, 919 F.3d 825, 841 n.12 (4th Cir. 2019) (rejecting contention that "passing reference by a Government witness to [defendant] being previously 'locked up' . . . amount[ed] to prejudicial testimony requiring a mistrial"). The district court immediately issued a curative instruction, and the court later reminded the jury in its instructions that the jury could not refer to any statement that the court had ordered it to disregard. The jury is presumed to have followed these instructions. *Johnson*, 587 F.3d at 631. Moreover, Dykes himself later testified to his prior felony convictions, ameliorating the potential prejudicial effect—informing the jury of Dykes' criminal history—that the statement may have had. Because neither Dykes nor

13

Hector has demonstrated that the district court's prompt curative instruction was insufficient to protect against any potential prejudice, we discern no abuse of discretion in the district court's denial of Defendants' motions for mistrials and for a new trial based on the testimony.

B.

We similarly find that the district court did not abuse its discretion in denying Dykes' second postjudgment and Hector's postsentencing motions for a new trial based on newly discovered evidence. In order for new evidence to warrant a new trial:

> (a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1993). A new trial may be granted solely on the basis of newly discovered impeachment evidence only in "an exceptional rare case." *Id.* (internal quotation marks omitted). This exception is narrow in scope, applying, for example, where the Government's case rested entirely on the uncorroborated testimony of a single witness later discovered to have "lied consistently in a string of previous cases." *United States v. Robinson*, 627 F.3d 941, 949 (4th Cir. 2010). Because the evidence proffered by Defendants—a local newspaper article about another drug conspiracy case involving a man who Dykes alleged set him up at the behest of the Government; inmate statements that other inmates said Cleghorne believed Dykes to be working with the police and that Cleghorne was retaliating against Dykes and Hector; and a vague allegation that

14

individuals were impersonating law enforcement agents in Georgia—does not meet this standard, the district court did not abuse its discretions in denying the motions.

V.

Finally, Defendants contend that the district court's money judgment of forfeiture violates the principle established in *United States v. Honeycutt*, 137 S. Ct. 1626, 1633, 1635 (2017), that a coconspirator who did not personally obtain proceeds of the crime cannot be held jointly and severally liable.[2] Any person convicted of a drug offense punishable by a term of imprisonment in excess of one year "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." 21 U.S.C. § 853(a)(1). We review the district court's legal conclusions underlying a forfeiture calculation de novo and its factual findings for clear error. *United States v. Oregon*, 671 F.3d 484, 490 (4th Cir. 2012).

In *Honeycutt*, the Supreme Court explained that "[f]orfeiture pursuant to § 853(a)(1) is limited to property the defendant himself actually acquired as the result of the crime." 137 S. Ct. at 1635. Here, however, in seeking the money judgment, the Government emphasized that it sought the judgment against both Defendants because "[t]he weight of evidence is that they worked together to manage their mobile narcotics buffet, with Dykes focused principally on sales and Hector on bookkeeping and related communications on the back end." (J.A. 2080). The district court did not clearly err in its decision to adopt

---

[2] Neither Dykes nor Hector raise any argument about the district court's calculation of the amount of the money judgment.

15

this basis as its findings of fact and in concluding that both Dykes and Hector obtained the proceeds from the conspiracy. *See United States v. Cingari*, 952 F.3d 1301, 1306 (11th Cir. 2020) (upholding joint and several liability against married couple under different forfeiture provision and differentiating from *Honeycutt* because "*Honeycutt* turned on the employer-employee relationship: the employer, as owner of the business, obtained the profits [of illegal sales]; the salaried employee never saw the fruits of his criminal labor" contrasted with the Cingaris, a married couple "who jointly operated their fraudulent business").

VI.

Accordingly, we affirm the district court's judgments and the orders denying Dykes' and Hector's motions for a new trial. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*